IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TABITHA REDENBAUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 24-205 |
| | ) |
| LELAND DUDEK,[1] | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 31st day of March, 2025, upon consideration of the parties' cross-motions for summary judgment, the Court, after reviewing the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Act, 42 U.S.C. §§ 401 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms.   *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)).   *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because

---

[1] Leland Dudek is substituted as the defendant in this matter, pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).   The Clerk is directed to amend the docket to reflect this change.

it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[2]

---

[2]    Plaintiff raises several points of alleged error in the Administrative Law Judge ("ALJ")'s decision denying her disability benefits.  (Doc. No. 11).  First, she contends that the ALJ failed to address relevant evidence of her physical and mental impairments and erred by relying on her "conservative treatment" to reject her claim.  (*Id.* at 8-17). Second, she argues the ALJ erred by improperly evaluating the medical opinion evidence. (*Id.* at 17-22).  Third, she contends that the ALJ erred by inadequately analyzing her obesity and migraine headache impairments, and by failing to adequately address her testimony.  (*Id.* at 22-25, 28-30).  As a result of these asserted errors, Plaintiff posits that her residual functional capacity ("RFC") finding is inaccurate.  (*Id.* at 25-28).  For the following reasons, the Court disagrees with Plaintiff and finds the ALJ's decision is supported by substantial evidence.

Upon reviewing all the evidence, the ALJ determined that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that she is limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling.  She should avoid extreme cold.  She cannot be exposed to moving mechanical parts.  The claimant is able to understand, remember and carry out simple instructions, perform simple, routine tasks, and make simple work related decisions.  She requires a low-stress environment, defined as no production rate pace work, but rather goal-oriented work with occasional and routine changes in the work setting.  "Routine change" is defined as that which does not require alteration in work method.  She can perform occasional work interacting with the public, coworkers, and supervisors.

(R. 28).  The Court finds this RFC finding is supported by substantial evidence for the following reasons.

The ALJ addressed all relevant evidence of Plaintiff's physical impairments. Plaintiff contends that substantial evidence does not support the ALJ's finding as to her walking ability and mental impairments, specifically, Plaintiff argues the ALJ committed harmful error by mischaracterizing the record and failing to discuss relevant evidence as to these impairments.  (Doc. No. 11 at 8-17).  As to her walking abilities, Plaintiff contends the ALJ ignored evidence that she would have trouble walking, including her diagnoses that would impact her ability to walk and the treating orthopedic surgeon's opinion that

Plaintiff had significant limitations in walking and standing.  (*Id.* at 10-11).  Plaintiff also argues that the ALJ failed to adequately discuss her subjective complaints related to walking.  (*Id.* at 10-12).   The decision, however, shows that the ALJ considered all this evidence.   As to Plaintiff's diagnoses, the ALJ acknowledged Plaintiff's arthritis, feet and hip issues, and chronic pain.  (R. 29, 31).  The ALJ acknowledged Plaintiff's complaints of pain but rejected these because Plaintiff had only diffuse muscular tenderness on examination.  (R. 29).  Additionally, exams showed Plaintiff could walk with a normal gait and could walk on her heels and toes without difficulty.  (R. 31).  The ALJ also considered the opinion of Plaintiff's treating orthopedic surgeon, Dr. Carl Hasselman, M.D., who limited Plaintiff to sedentary work, and the ALJ found it not persuasive.  (R. 35).  Further, the ALJ considered Plaintiff's subjective complaints of pain and rejected these because they were inconsistent with the evidence.  (R. 32-33).  Specifically, the ALJ stated that Plaintiff's complaints of foot pain were "inconsistent with the June 2021 consultative examination, in which she was able to perform most tasks and ambulate normally[.]"  (R. 33).  Accordingly, the ALJ addressed all of the evidence in regard to Plaintiff's physical impairments.

Similarly, the Court rejects Plaintiff's argument that the ALJ failed to consider evidence related to her mental impairments.  (Doc. No. 11 at 12-16).   Plaintiff contends the ALJ ignored a treating physician opinion, that of Dr. Aleksandr Mikhaylovskiy, M.D., that noted she was "quite difficult to manage" because she is "constantly asking questions" without "listening to the answer" and erred by failing to incorporate social limitations into her RFC to address these impairments.  (*Id.* at 12 (quoting R. 2907)).  Plaintiff argues this doctor's notation as to her social limitations was consistent with the record and, therefore, should have been adopted.  (*Id.* at 12-15).   Additionally, Plaintiff contends the ALJ ignored evidence that she is a hoarder and how this would impact her ability to perform unskilled work on a regular and continuous basis.  (*Id.* at 16).   The Court disagrees.

The ALJ considered records of Plaintiff's treating physician, Dr. Mikhaylovskiy, noting that Plaintiff visited Dr. Mikhaylovskiy with complaints of mid-back pain radiating to her chest, but that upon examination she had normal findings and was recommended physical therapy.  (R. 30 (citing Ex. 31F)).  While the ALJ did not explicitly note that Dr. Mikhaylovskiy observed that Plaintiff was "quite difficult to manage" for the reasons stated above, this is not harmful error as the ALJ is not required to mention every piece of evidence within the record.  *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 743, 747 (3d Cir. 2009).   Moreover, the ALJ specifically mentioned Plaintiff's hoarding tendencies when analyzing the treatment records from Dr. Megan Boyle, D.N.P.   (R. 32).  Additionally, the ALJ considered Plaintiff's social limitations and added that Plaintiff be limited to only occasional work interacting with the public, coworkers, and supervisors.  (R. 28).   This was based, in part, on her analysis of the opinion of Dylan McKessey, LCSW, who opined that Plaintiff's mental impairments would impact her ability to respond appropriately to supervision, workers, and work pressures.  (Ex. 26F/4).   The ALJ found

3

this statement partially persuasive because there was very little to support the opinion and it was inconsistent with contemporaneous mental health records. (R. 35). In sum, substantial evidence supports the ALJ's analysis of Plaintiff's mental impairments and that the formulated RFC fully accounts for them. Plaintiff does not point to evidence that would lead the Court to conclude that remand is warranted.

Additionally, the ALJ did not improperly rely on Plaintiff's "conservative treatment" to reject her claim for benefits. Plaintiff contends the ALJ's statement that her treatment has been "conservative" was not supported by substantial evidence because the record is almost 5,000 pages long and the Plaintiff has undergone transcranial magnetic stimulation ("TMS") treatment to reduce obsessive compulsive disorder ("OCD") symptoms, which involves shocking the brain. (Doc. No. 11 at 16-17). Further, Plaintiff argues the ALJ failed to recognize that she suffers from significant mental health disorders that cause maladaptive thinking and place barriers to her treatment regimen and that she is petrified to ingest medication due to her tardive dyskinesia. (*Id.*). Plaintiff overlooks that the ALJ explained her reasoning for finding that Plaintiff's treatment was "generally routine and conservative." (R. 33). Indeed, the ALJ stated that Plaintiff "was able to mitigate her depression and other mental symptoms with adherence to medication and treatment[.]" (R. 33). While this did not specifically note Plaintiff's TMS treatment, her maladaptive thinking, or her aversion to medication, the ALJ was aware of Plaintiff's tardive dyskinesia, mental disorders, and treatments as she noted these throughout her decision. (R. 31, 32, 33 (noting Plaintiff's tardive dyskinesia and mental impairments, and treatments generally)). Accordingly, Plaintiff's argument on this point is without merit.

Further, the ALJ evaluated the medical opinion evidence in accordance with the relevant regulations. Plaintiff specifically takes issue with the ALJ's analysis of the consultative examiner's opinion, and the opinions of Dr. Hasselman, Ms. Boyle, and Mr. McKessey. Plaintiff contends the ALJ failed to address two of Dr. Hasselman's four opinions and rejected two of his opinions without addressing the consistency and supportability factors. (Doc. No. 11 at 21). Additionally, Plaintiff argues the ALJ erred by rejecting Ms. Boyle's and Mr. McKessey's opinions because their opined work restrictions were "inconsistent" with treatment notes showing "relatively normal functioning[,]" yet the treatment notes showed that Plaintiff had maladaptive functioning. (*Id.* at 21-22). The Court disagrees with Plaintiff for the following reasons.

The ALJ did not err by failing to address two of Dr. Hasselman's four opinions, as the regulations only require that the ALJ provide "source level" analysis where the persuasiveness of the medical source is evaluated rather than each medical opinion individually. 20 C.F.R. § 404.1520c(b)(1). The two opinions not discussed by the ALJ did not differ materially from the two that the ALJ did address. (R. 2348, 3303-07, 3627-28, 3656) (all limiting Plaintiff to a range of sedentary work)). Additionally, the ALJ

4

sufficiently addressed the consistency and supportability factors when analyzing Dr. Hasselman's other two opinions. Dr. Hasselman opined that Plaintiff was quite limited in that she could only lift or carry 10 pounds occasionally, could occasionally stoop or climb stairs, and would miss more than four days per month of work, among other limitations. (Ex. 35F). However, just four months later, in July 2022, he opined that Plaintiff was "capable of sedentary work[.]" (Ex. 42F/12). The ALJ found this opinion not persuasive because although it was "supported by direct examination, this opinion nevertheless overstates the claimant's physical condition, as evidenced by her physical examinations[.]" (R. 35). This consistency and supportability analysis was adequate and complied with the relevant regulations. 82 Fed. Reg. at 5853. *See also* 20 C.F.R. §§ 404.1520c(b) and (c).

The Court also finds no merit in Plaintiff's argument that the ALJ erred by rejecting Ms. Boyle's and Mr. McKessey's opinions. (Doc. No. 11 at 21-22). Ms. Boyle opined that Plaintiff would miss four or more days of work per-month, was unable to meet competitive work standards in many areas of mental functioning, and had no ability to function, concentrate, persist, maintain pace, or maintain attendance, among other limitations. (R. 35; Ex. 39F). The ALJ found this opinion not to be persuasive because while it was supported by firsthand examination, it was inconsistent with the treatment records. (R. 35). Similarly, Mr. McKessey opined that Plaintiff would have difficulty comprehending and following instructions due to extreme high distress, among other limitations. (R. 34-35; Ex. 26F/4). The ALJ found this opinion only partially persuasive because there was very little support for the opinion and it was inconsistent with Ms. Boyle's contemporaneous mental health records, which revealed relatively normal functioning. (R. 35 (citing Ex. 41F)). The Court views Plaintiff's attempt to undermine the ALJ's reasoning by pointing to "maladaptive functioning" in the treatment records as a request to reweigh the evidence, as the ALJ considered much of the evidence upon which Plaintiff relies. (Doc. No. 11 at 21-22). The ALJ acknowledged that Plaintiff was in an intensive outpatient program, had hoarding tendencies, suffered from mental impairments, and had emotional dysregulation. (R. 27, 32). The ALJ incorporated limitations into Plaintiff's RFC to account for her "credibly established limitations[,]" including social and mental limitations. (R. 28); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Further, to the extent that Plaintiff points to evidence that the ALJ did not explicitly consider, the Court again notes that the ALJ was under no obligation to mention every piece of evidence in the record. *See Beety-Monticelli*, 343 Fed. Appx. at 747. Accordingly, Plaintiff's argument on this point fails.

Further, the ALJ adequately considered Plaintiff's obesity and migraine headache impairments. Plaintiff contends the ALJ failed to explain her finding that Plaintiff's obesity would result in no functional work restrictions. (Doc. No. 11 at 22-23). The Court disagrees. The ALJ found that Plaintiff's obesity was a nonsevere impairment and the ALJ noted she "fully considered obesity in the context of the case record in making this

5

decision[.]" (R. 25). In her RFC discussion, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 28). This is enough for the Court to find that substantial evidence supports the ALJ's analysis as to Plaintiff's obesity, and the Court does so. *See Jones v. Comm'r of Soc. Sec.*, 297 Fed. Appx. 117, 120 (3d Cir. 2008) (stating "we take the ALJ at [her] word").

Plaintiff also argues the ALJ did not adequately compensate for her migraine headaches by limiting Plaintiff to avoid "extreme cold." (Doc. No. 11 at 25). Plaintiff contends this limitation is based on the ALJ's flawed reading of the opinion of Linda Myers, M.D. as this source never mentioned Plaintiff's migraines as a reason for avoiding temperature extremes. (*Id.*). Further, Plaintiff argues that her migraines are the result of her cervical impairment and that the ALJ erred by not including appropriate limitations to address these symptoms. (*Id.*). However, the ALJ analyzed Dr. Myers' opinion, and stated that she opined, in part, that Plaintiff avoid exposure to extreme cold. (R. 34 (citing Ex. 1A/15-19); Ex. 3A/7). Dr. Myers noted that Plaintiff's cervical issues, as evidenced by a 2019 cervical MRI, supported this limitation. (Ex. 3A/7). This opinion was affirmed by Dr. Margel Guie, D.O., and the ALJ found Dr. Guie's opinion to be slightly more persuasive because he had access to more evidence. (R. 34). The ALJ explained that she incorporated the limitation from extreme cold into Plaintiff's RFC because it was consistent with Plaintiff's history of migraines and narcolepsy. (R. 34). This explanation was adequate as the ALJ is able to formulate the RFC based on the entirety of the record without being constrained by a medical source's explanation for such limitations. *Titterington v. Barnhart*, 174 Fed. Appx. 6, 11 (3d Cir. 2006) (noting "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."). Accordingly, the Court rejects Plaintiff's argument on this point.

Lastly, the ALJ considered Plaintiff's testimony and adequately explained her reasons for rejecting it. Plaintiff contends the ALJ overlooked her testimony regarding limitations in standing and walking, chronic pain, mood instability, severe anxiety, panic attacks, and struggles with OCD. (Doc. No. 11 at 29-30). The Court disagrees. The ALJ explicitly acknowledged that Plaintiff alleged that she had pain all over her body and had trouble standing, walking, sitting, and stair climbing, among other complaints. (R. 28-33). Moreover, the ALJ considered Plaintiff's mental struggles and impairments, including anxiety, panic attacks, and OCD. (R. 25, 29, 32, 35). The ALJ recognized that Plaintiff was in multiple programs through Western Psychiatric Hospital for OCD, anxiety, and depression. (R. 32). Further, the ALJ classified Plaintiff's chronic pain, bipolar disorder, depression, and anxiety as severe impairments at Step Two of the sequential process. (R. 25). The ALJ explained that she considered Plaintiff's testimony, but found it was not entirely consistent with the medical evidence of record. (R. 32-33). This was logical as the record showed that Plaintiff could perform light work,

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 15) is GRANTED.

s/Mark R. Hornak
Chief United States District Judge

ecf:        Counsel of record

---

had been "dealing very well" with her pain without medications, and showed that Plaintiff was managing her mental impairments after attending programs at Western Psychiatric Hospital.  (R. 30).   Thus, Plaintiff's argument on this point is therefore without merit.

In sum, the ALJ's findings and conclusions are supported by substantial evidence and the decision of the Commissioner must be affirmed.